**Elizabeth PAEK and Natalie Paek, Minors, by Laurie Wilson, their Natural Mother and Guardian**

v.

**PEN ARGYL AREA SCHOOL DISTRICT and Board of School Directors of the Pen Argyl Area School District, Appellants.**

Commonwealth Court of Pennsylvania.

Argued April 10, 2007.

Filed May 9, 2007.

---

Alan B. McFall, Bangor, for appellants.

Anthony J. Martino, Bangor, for appellees.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge, KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Pen Argyl Area School District and Board of School Directors of the Pen Argyl Area School District (collectively, the School District) appeal from an order of the Court of Common Pleas of Northampton County (trial court) granting a permanent injunction and directing the School District to admit Elizabeth Paek and Natalie Paek [1] (Students) as resident students in the School District as long as they maintain a residence in the School District.

This matter arose when it was brought to the School District's attention that the Students were attending school at Pen Argyl Area High School, but were not residing in the School District, and the School District requested that they be removed from enrollment in the School District for non-compliance with the School District's residency requirement. The Students' mother, Laurie Wilson (Wilson), requested a special hearing on the matter, which was conducted before a Hearing Officer on February 13, 2006.

At the hearing, Wilson testified that she was the Students' only parent because the children's father, Mr. Paek, from whom she was divorced, was killed in a car accident in July 2003. At the time of Mr. Paek's death, the family was residing at 422-1/2 George Street, Pen Argyl, Pennsylvania, which is within the boundaries of the School District. That property was the upper half of a duplex and consisted of two furnished bedrooms with clothes in the closets, a kitchen and a living room. Wilson stated that the family continued to reside at that property after Mr. Paek's death, renting from the owner of the duplex, Jeffrey Wilson, whom she was dating. Wilson stated that she married Jeffrey Wilson on December 24, 2004. Wilson continued stating that she and her new husband also owned a home in Saylorsburg, Monroe County, Pennsylvania, which is located in the Pleasant Valley School District and is about two miles from the George Street property. That home consisted of three bedrooms, a home office and a sun room. The family pets—four dogs and a cat—lived there.

Wilson testified that her children were enrolled in the Pen Argyl Area School District during the 1997–98 school years through the 2001–02 school years. For the 2002–03 school years, they were enrolled in the Pleasant Valley School District when they moved to the home they now own in Saylorsburg. In the fall of 2003, she stated that she re-enrolled her children in the Pen Argyl School District because her children were being harassed, the school was overcrowded and they could not get an education.

Wilson stated that she considered the George Street address her primary residence because she was there everyday, even though she and her husband maintained two homes and she had a cat at that home. She added that all of her relatives only visited her at that address. To support her position that George Street was her primary residence, she offered into evidence her driver's license listing her George Street address, pay stubs from her employer which were mailed to her George Street address, paychecks deposited to a bank account where statements listed her address as the George Street address, and an electric bill sent to the George Street School.

---

1. Elizabeth Paek is a junior and Natalie Paek is a sophomore at Pen Argyl Area High

address in her name. Wilson also stated that she paid school taxes to the School District. On cross-examination, however, Wilson admitted that she and her children only spent about two nights a week at the George Street address. Sometimes they would get up as early as 5:30 a.m. and return to their other home to shower, spend time with their dogs, and then the children would drive to school.

To support its removal of the Students from the School District, Walter Schlegel, Jr. (Schlegel), the Business Administrator for the School District, testified that the Students' residency status was questioned in the spring of 2005 when Kathleen Cosgrove (Cosgrove), the School District's Attendance Officer, received questions from other families as to why the Students were allowed to reside outside the School District but still attend Pen Argyl. It was at that time that Cosgrove began observations to determine whether the allegations regarding non-residency were true. Schlegel testified that there was no school board policy to accept tuition from Students residing outside the School District and the School District would not accept tuition for out-of-district students.

■ Based on the evidence presented, the Hearing Officer determined that the Students did not reside at 422–1/2 George Street, Pen Argyl, Pennsylvania, and, therefore, were not residents of the School District and not entitled to school privileges of the School District. The Students were then prohibited from attending school in the School District. Wilson filed a complaint with the trial court on behalf of her children which requested the court to grant injunctive relief ordering the

School District to allow the Students to attend the School District as residents. Determining that the case came down to one issue—whether the Students could attend the School District despite maintaining a primary residence outside the School District's boundaries—the trial court reversed the Hearing Officer and granted a permanent injunction relying on *In re Residence Hearing Before Board of School Directors, Cumberland Valley School District*, 560 Pa. 366, 744 A.2d 1272 (2000). This appeal by the School District followed.[2]

■ Section 1302 of the Public School Code of 1949 (School Code)[3] provides that "[a] child shall be considered a resident of the school district in which his parents or the guardian of his person **resides.**" (Emphasis added.) In *Cumberland Valley School District*, our Supreme Court was faced with deciding whether children "resided" in Cumberland Valley School District within the meaning of Section 1302 of the School Code. In that case, the Thane family moved from their home in Chambersburg, Franklin County, to a townhouse in Hampden Township, Cumberland County, to live closer to Harrisburg Academy where their son could attend a private school. Their other son, who required special education, also moved and was enrolled in the proper school in Cumberland County. Mrs. Thane spent weekdays and alternate weekends at the townhouse while other weekends and vacations were spent in Chambersburg. She received mail and phone calls from the school district at the townhouse and paid personal taxes to Hampden Township. She changed her voter registration and driver's license ad-

***

2. Our scope of review from the grant of a permanent injunction is limited to determining whether the trial court abused its discretion or committed an error of law. *Baird v.*

*Township of New Britain*, 159 Pa.Cmwlth. 333, 633 A.2d 225 (1993).

3. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 13–1302.

dress to reflect her Hampden Township address. When her son, requiring special education, required enrollment at a private school for children with learning disabilities due to deterioration in his mental health, Mrs. Thane requested Cumberland Valley School District to pay for that education which was located in Montgomery County. Cumberland Valley School District turned her down stating that she was not a resident of that district and not entitled to educational benefits. On appeal, the Board of School Directors affirmed, finding that her townhouse in Cumberland County was only a temporary residence for their convenience. Mrs. Thane filed an appeal with the Court of Common Pleas which reversed because the Board misinterpreted the term "resides." This Court affirmed in relevant part.

Making its way to the Supreme Court, the Court concluded that the Thanes were residents by relying on what the General Assembly meant when it used the word "resides." The Court first stated that the word "resides" "refers to a place where the custodial parent maintains a residence, and contrary to the board's view, it need not be a primary residence or domicile. The legislature, in enacting section 1302, is presumed to have known the common meanings of the terms 'residence' and 'domicile.' In choosing the term 'resides' rather than terms such as 'has a primary residence' or 'is domiciled' in the school district, the legislature did not require that parents do anything more than reside in a school district in order to enroll their children in the local public schools." *Id.* at 370, 744 A.2d at 1274. The Court went on to explain that a domicile was a place where people had their fixed and permanent home where they intended to return after their absence *while a residence, in contrast, was a "factual place of abode" evidenced by a "person's physical presence*

*in a particular place." Id.* at 371, 744 A.2d at 1275. (Emphasis added.)

The School District contends that the trial court erred by granting the permanent injunction because both Section 1302 of the School Code of 1949 and our Supreme Court's holding in *Cumberland Valley School District* require that a student actually "reside" in a school district in order to utilize that school district's educational facilities, and the record established that the Students do not actually "reside" in the School District, but instead live in the Pleasant Valley School District. Unlike in *Cumberland Valley School District* where the students actually lived in the school district, it contends that the Students in this case do not "reside" in the School District because they only stay at the George Street home on average two nights a week, and Wilson conceded that they often woke up by 5:30 a.m. to return to their home in Saylorsburg in the Pleasant Valley School District to eat breakfast, shower and play with their dogs before school.

Because Section 1302 of the School Code provides that a child is considered a resident of the school district where his or her parent resides, the test then is to determine whether Wilson, not the Students, maintains a "physical presence" at the George Street address. Here, Wilson testified that she owned the George Street home, received mail at that location, paid taxes to the School District, had a driver's license listed at the George Street address, had her bank statements list her George Street address, had her electric bill mailed to her George Street address, and she even described the inside of the home as being furnished with a pet cat living there. However, what she failed to do was describe that she spent any significant amount of time in the home. In fact, all that Wilson could state was that she spent

about two nights a week sleeping at the George Street address, her children had friends over after school, and the family occasionally entertained relatives who visited. Wilson also readily admitted that her family was commuting back and forth between the residences and taking showers in the early hours of the morning at her Saylorsburg home, evidencing that what she really had at George Street was a residence of convenience and what she really was doing was keeping up the appearance of maintaining a home, not actually living there and having a physical presence as required by *Cumberland Valley School District.*

Although Wilson contends that our Supreme Court in *Cumberland Valley School District* did not require a family to have a "primary residence" or "domicile" in order to qualify for a school district and only required a family to "reside" in a school district, which she alleges she does at George Street, we disagree that she even does that much based on her own testimony that she spends very little time at that address compared to the amount of time spent at the Saylorsburg address. "Primary residence" or "domicile" is defined in Cumberland Valley School District as "that place where [people have their] true, fixed and permanent home and principal establishment and to which whenever [they are] absent [they have] the intention of returning." *Id.* at 371, 744 A.2d at 1275. Nothing here establishes that George Street was a residence in any sense of the word. Based on her comments, this address was only maintained because she was not happy with the Pleasant Valley School District because her children were harassed, the school was overcrowded and they could not get an education; in other words, Wilson was "school shopping." Because the prevention of "school shopping" is the purpose behind the General Assembly's enactment of Section 1302 of the School Code, parents cannot simply rent or buy multiple properties in several school districts and then choose between those properties on a given day just so their children can attend a particular school.

Accordingly, the order of the trial court is reversed, and the Students are prohibited from attending school in the School District until such time that Wilson "resides" at the George Street address.

### *ORDER*

AND NOW, this *9th* day of *May,* 2007, the order of the Court of Common Pleas of Northampton County, dated August 25, 2006, is reversed.